**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Marion Cotham, | No. CV-21-00138-PHX-ROS |
| Petitioner, | **ORDER** |
| v. | |
| David Shinn, et al., | |
| Respondents. | |

Petitioner Michael Marion Cotham was convicted in state court on two counts of child prostitution. After not obtaining post-conviction relief in state court, Petitioner filed a federal petition seeking a writ of habeas corpus. Petitioner argues, among other things, the state court violated his rights under the Sixth Amendment when it did not allow Petitioner to represent himself during trial. Magistrate Judge Michael T. Morrissey issued a Report and Recommendation ("R&R") recommending the Court conclude Petitioner's Sixth Amendment claim, as well as his other claims, either fail on the merits or are procedurally barred. Petitioner filed objections but, having reviewed the necessary portions of the R&R de novo, Petitioner is not entitled to relief. The R&R will be adopted.

**BACKGROUND**

The R&R sets forth the factual and procedural background and it is adopted as accurate. In brief, Petitioner was charged with four counts of child prostitution. During pretrial proceedings, "the superior court granted several requests by [Petitioner] to change counsel." (Doc. 23 at 1-2). Petitioner eventually "invoked his right to self-representation"

and was representing himself, assisted by advisory counsel, when trial began on October 8, 2013. (Doc. 11-1 at 136).

That first day of trial did not begin with jury selection. Instead, the first day consisting of the trial court reviewing the procedures that would be followed during trial, including how the jury selection set for the following day would occur. (Doc. 11-1 at 12). During the proceeding on October 8, the trial court explained to Petitioner his right to represent himself was "a limited right" and Petitioner had "to follow certain rules." (Doc. 11-1 at 153). One rule the trial court emphasized was that Petitioner had to attend the trial and, if he did not, he might not be allowed to continue to represent himself. Recognizing that Petitioner was in custody pending trial, the court stated:

> If you fail to attend the trial or refuse transport – it has happened – and if you decide to do that and absent yourself from this courtroom, you waive your right to represent yourself. So you need to make sure that you get ready and get here.

(Doc. 11-1 at 157). The court noted trial would start at 11 a.m. each day and Petitioner should "make sure" he was ready to be transported each day so trial could begin on time. (Doc. 11-1 at 158).

After informing Petitioner of his obligation to be on time to trial, the proceeding on October 8 continued with a lengthy discussion regarding motions in limine. Eventually the discussion turned to Petitioner's contention that he was having difficulty preparing for trial. (Doc. 11-1 at 216). Petitioner complained he had no way to access "disks" containing video recordings of witness statements as well as Petitioner's own interview with the police. (Doc. 11-1 at 217). Petitioner stated he could not be prepared for trial without reviewing those disks: "I need the disks, and I need somebody to understand my situation so that I can work through it, and I can be properly prepared." (Doc. 11-1 at 215-216).

The court accepted Petitioner's professed need to review the disks before jury selection. To allow Petitioner time to do so, the court arranged for Petitioner to be transported to the courthouse by 10:30 a.m. the following day. The court directed the prosecutor to make the disks available and for advisory counsel to work with Petitioner to

review the disks in the morning so jury selection could begin in the afternoon on October 9. (Doc. 11-1 at 220-222). The October 8 proceeding ended with a statement by the trial court confirming Petitioner would be transported to the courthouse by 10:30 a.m. to complete the allegedly crucial task of reviewing the disks. (Doc. 11-1 at 243).

The following morning, Petitioner was not ready to be transported to the courthouse and he did not arrive by 10:30 a.m. Petitioner was, however, transported to the courthouse later in the morning or shortly after noon. Once Petitioner was present, the trial court held a hearing to determine why Petitioner had not been transported in the morning. At that hearing Petitioner claimed he had been unable to be transported earlier because of "complications with [his] back." (Doc. 11-1 at 250). Those complications allegedly meant Petitioner was "physically unable to get up from [his] bed to actually walk to do anything physically" when the officers informed him it was time to be transported. (Doc. 11-1 at 253). Petitioner claimed it was not until later in the morning that he regained the ability to get out of bed. At that time, Petitioner was transported to the courthouse.

The court did not believe Petitioner's excuse for why he had been unable to arrive in the morning. The court stated "I'm not going to find that your explanation is merit – has merit at this point." (Doc. 11-1 at 255). Petitioner responded "That's fine."[1] (Doc. 11-1 at 255). The court then ordered Petitioner would not be allowed to represent himself and the court appointed advisory counsel as defense counsel.

Upon being appointed, defense counsel immediately asked for a continuance of the trial. (Doc. 11-1 at 255). The court granted a two-week continuance. The jurors who had been summoned and were waiting for the trial to begin were dismissed due to the continuance. After the brief continuance, the trial proceeded with Petitioner represented by counsel. Petitioner was convicted on two of the four counts of child prostitution.

In his direct appeal Petitioner argued the trial court had abused its discretion in

---

[1] Petitioner later expressed relief to the court that he would no longer be representing himself: "And I'm kind of glad you did, you know, in a sense take that from me. Me fighting my trial, I don't know enough about it, and I'm pretty premature [sic] about stuff like this. So if that's your decision, that's your decision. . . . Thank you for doing that, I guess, and if that's your decision, thanks for your decision . . . ." (Doc. 11-1 at 265).

revoking his self-representation. The Arizona Court of Appeals disagreed.

> Given [Petitioner's] refusal to be transported on the first day of trial, notwithstanding the superior court's clear, unambiguous and timely warnings that [Petitioner] would lose the right to represent himself if he did not follow the court's procedures and refused transport, the superior court did not abuse its discretion in revoking [Petitioner's] right of self-representation.

*State v. Cotham*, 2015 WL 1228183, at *3 (Ariz. Ct. App. 2015). Petitioner's convictions were affirmed.

After his direct appeal failed, Petitioner filed a petition for post-conviction relief claiming ineffective assistance of counsel and prosecutorial misconduct. The state trial court denied that petition. (Doc. 1-2 at 129). At that point the post-conviction relief proceedings took a strange turn. Instead of seeking appellate review of the trial court's denial, Petitioner filed a "Motion for Extension of Time to File Response to Court's Ruling" in the trial court. (Doc. 11-1 at 87). That document sought a fifteen-day extension for Petitioner to "complete his response to the court's ruling." (Doc. 11-1 at 87). There is no explanation why Petitioner believed he needed to file a "response" to the trial court's denial of his petition. The trial court denied that request without discussion. (Doc. 11-1 at 91).

After denial of his request for more time, Petitioner filed with the Arizona Court of Appeals a document titled "Motion to Appeal the Decision to Deny the Extension of Time to Respond to the Court's Ruling." (Doc. 11-1 at 96). That document began by arguing the trial court had erred by not granting Petitioner more time to file his "response" to the denial of his petition for post-conviction relief. (Doc. 11-1 at 97). But the document also presented arguments about the revocation of Petitioner's right to represent himself and the need for an order removing the trial court judge from Petitioner's post-conviction relief proceedings. (Doc. 11-1 at 99-100). The appellate court issued an order calling for the record. (Doc. 1-2 at 139). That order prompted Petitioner to file a "Motion for Clarification; Motion for Extension of Time to Properly File Petition for Review." (Doc. 11-1 at 110). That document sought an order allowing Petitioner to seek rehearing in the

trial court or an extension of time for Petitioner to file a formal petition for review with the court of appeals. The court of appeals denied that motion without discussion. (Doc. 11-1 at 122).

In September 2019, the Arizona Court of Appeals construed Petitioner's "Motion to Appeal the Decision to Deny the Extension of Time to Respond to the Court's Ruling" as a petition for review. So construed, review was granted but the appellate court denied all relief. (Doc. 1-2 at 142). Petitioner sought rehearing but rehearing was denied in February 2020. In January 2021, Petitioner filed his federal petition for a writ of habeas corpus. Petitioner's federal petition asserts six claims, including the claim that Petitioner's Sixth Amendment right to represent himself was violated.

## ANALYSIS

It is very difficult for state prisoners to obtain relief from their state convictions in federal court. The statute setting forth the conditions for granting federal habeas corpus relief "reflects the view that habeas corpus is a guard against *extreme* malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (emphasis added). To win relief, Petitioner must have raised his claims in state court or, if he failed to do so, he must meet a high bar for the Court to be allowed to reach his claims. *Martinez v. Ryan*, 566 U.S. 1, 10 (2012) ("A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law.").

For those claims raised in the state courts, Petitioner can obtain relief only if the state court rulings were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. In other words, the state courts must have "blunder[ed] so badly that every fairminded jurist would disagree" with the state courts' rulings. *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021). Any claims not addressed by the state court are subject to a less-demanding standard, assuming they can be reached at all. *See Atwood v. Ryan*, 870 F.3d 1033, 1060 n.22 (9th Cir. 2017) (noting when a prisoner overcomes

procedural default the claim must be reviewed de novo).

## I.    Revocation of Self-Representation

Petitioner's first claim is the trial court violated the Sixth Amendment by revoking Petitioner's self-representation. Respondents concede this claim was exhausted in state court such that it should be resolved on the merits. The R&R addresses this claim and concludes Petitioner is not entitled to relief. Under the extremely deferential review this Court must conduct of the state court's ruling, the R&R is correct.

The Sixth Amendment guarantees a competent criminal defendant the right to represent himself in a criminal trial.[2] *Faretta v. California*, 422 U.S. 806, 819 (1975). However, "*Faretta* itself and later cases have made clear that the right of self-representation is not absolute." *Indiana v. Edwards*, 554 U.S. 164, 171 (2008). Thus, a criminal defendant who engages in "serious and obstructionist misconduct" may be denied the right. *Faretta*, 422 U.S. at 834 n.46. In addition, a defendant who "abuse[s] the dignity of the courtroom" or refuses "to comply with relevant rules of procedural and substantive law" may be denied the right. *Id. See also McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984) (noting limitations on *Faretta* right).

Since *Faretta*, the Supreme Court has not provided clear guidance on the precise level of misconduct necessary to merit revocation of an individual's right to self-representation. Lower courts have interpreted *Faretta* as requiring significant misconduct.[3] *See United States v. Flewitt*, 874 F.2d 669, 671 (9th Cir. 1989) (concluding refusal to "get ready [for] trial" was insufficient to revoke self-representation). But there is no Supreme Court authority prohibiting revocation of self-representation when a prisoner fails to appear at an ordered time and that failure prevents the trial from proceeding as scheduled.

As noted earlier, federal courts may grant relief to state prisoners only when the

---

[2] There is an exception for criminal defendants who have "severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Indiana v. Edwards*, 554 U.S. 164, 178 (2008). Neither in state court nor here have Respondents argued this exception might apply to Petitioner.

[3] Only Supreme Court holdings can supply the clearly established law that governs the evaluation of the state courts' decisions. However, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018).

state courts "blunder[ed] so badly that every fairminded jurist would disagree" with their rulings. *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021). When determining whether the "blunder" is of sufficient magnitude to merit relief, federal courts can only rely on the holdings of Supreme Court cases. In the circumstances of this case, revocation of Petitioner's self-representation rights was not a sufficiently severe "blunder" to merit relief. Petitioner's unexcused failure to arrive on time and prepare for the trial set to begin that day constituted refusal to comply "with basic rules of courtroom protocol and procedure." *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). The R&R's analysis will be adopted and the Sixth Amendment claim will be rejected on the merits.

## II. Remaining Claims

The R&R concludes Petitioner's other claims are procedurally defaulted.[4] Petitioner filed objections to some portions of the R&R's analysis. However, reviewing de novo the portions Petitioner objected to, the R&R is correct that the claims are procedurally defaulted.

The procedural default of certain claims can be attributed to Petitioner's actions after the state trial court denied his petition for post-conviction relief. It appears Petitioner was confused how to seek review of the trial court's denial of his post-conviction relief petition. Thus, Petitioner filed documents with the Arizona Court of Appeals, but those documents were not procedurally proper. Petitioner's filings also failed to identify certain claims Petitioner apparently wished to pursue. The R&R's analysis regarding procedural default based on Petitioner's filings in the Arizona Court of Appeals is correct.

The R&R also concludes the procedural default of certain claims involving ineffective assistance of trial counsel cannot be excused because Petitioner cannot satisfy the threshold of "a substantial claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). Nor can Petitioner satisfy any other exception that would excuse

---

[4] The R&R rejects one claim involving ineffective assistance of appellate counsel on the merits. (Doc. 23 at 28-29. That claim alleges Petitioner received ineffective assistance of appellate counsel based on counsel's failure to raise the *Faretta* issue. Because the *Faretta* issue was raised by Petitioner in his "pro se supplemental brief" and rejected, this claim has no merit.

the procedural default. Construing Petitioner's objections as aimed at these conclusions, upon de novo review the R&R's analysis is correct and will be adopted in full.

Accordingly,

**IT IS ORDERED** the Report and Recommendation (Doc. 23) is **ADOPTED IN PART**. The petition for writ of habeas corpus (Doc. 12) is **DENIED** and **DISMISSED WITH PREJUDICE** and the Clerk of Court shall enter such a judgment.

**IT IS FURTHER ORDERED** leave to proceed in forma pauperis and a certificate of appealability are **DENIED** because dismissal of the petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

Dated this 29th day of August, 2023.

Honorable Roslyn O. Silver
Senior United States District Judge